UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADMISSIONS PROCESSING, L.L.C.,

       Plaintiff,

                                                         Case No. 05-CV-74541
vs.                                             HON. GEORGE CARAM STEEH

OAKLAND UNIVERSITY,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S RENEWED MOTION
## FOR PARTIAL SUMMARY JUDGMENT (# 26)

Oakland University (OU) renews its motion for partial summary judgment of Admissions Processing, L.L.C.'s (AP) breach of contract claim. A hearing was held on January 25, 2007. For the reasons set forth below and at the hearing, OU's motion for partial summary judgment will be GRANTED.

### I. Background

AP filed an Amended Complaint on January 10, 2006 alleging it contracted with OU under a September 7, 2004 "Services and Access Agreement" (Agreement) to install an admissions processing computer program called "Capture." Count I alleges breach of contract. Count II alleging quantum meruit was dismissed by the court on March 8, 2006 without prejudice. OU filed counterclaims on March 20, 2006 of breach of contract, innocent misrepresentation, and fraudulent misrepresentation.

The issue before the court, raised here and in OU's previous motion for partial summary judgment, is whether AP may recover contract damages for "extras" or "enhancements" AP allegedly added to the computer program at OU's request. OU's earlier motion for partial summary judgment was denied on September 25, 2006 in

deference to the completion of discovery, which closed on October 31, 2006.

## II. Contract Language

Paragraph 5(a) of the Agreement requires OU to pay AP a flat-fee of $19.00 per processed application. OU argues AP's contractual claim for additional damages is precluded by paragraph 11(g) of the Agreement:

> (g) <u>Remedies</u>. The remedies provided in this Agreement are cumulative and the use of any remedy by the University will not preclude or waive the use of any or all other remedies. The remedies provided to the University in this Agreement are in addition to any other rights available to the University at law or in equity. The Company [AP] will not be entitled to, and hereby waives any monetary claims for or damages arising from or related to, lost profits, lost business opportunities, unabsorbed overhead or any indirect or consequential damages.

AP counters it is entitled to recover $353,750.00[1] for 3,450 hours of additional work it performed implementing OU requested program "enhancements," relying on paragraph 5(g) of the Agreement:

> (g) <u>Reimbursement - Additional Expenses</u>. The University may *request in writing* services in addition to the Services provided for in this Agreement, including but not limited to special handling such as certified mail, professional shredding services and overnight delivery services (e.g. Federal Express). Company *will promptly invoice* the University for Company's actual cost of such additional services.

(italics emphasis added).

## III. Partial Summary Judgment

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See

---

[1] AP claimed it was entitled to $346,200.00 in contractual damages in response to OU's earlier motion for partial summary judgment.

Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  To defeat a motion for summary judgment, there must be evidence in the record on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## B. Michigan Contract Law

Sitting in diversity, this court must apply Michigan's conflict of law rules.  See Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357, 361 (6th Cir. 1993).  The parties agree Michigan law is controlling, consistent with paragraph 11(q) of the Agreement.  The court will apply Michigan law.  See Wonderland Shopping Center Venture Ltd. Partnership v. CDC Mortgage Capital, Inc., 274 F.3d 1085, 1092 (6th Cir. 2001); Equitable Life Assurance Society of the United States v. Poe, 143 F.3d 1013, 1016 (6th Cir. 1998); Chrysler Corporation v. Skyline Indus. Serv., Inc., 448 Mich. 113, 120, 120 n.14, 125, 528 N.W.2d 698 (1995).

Under Michigan law, a court's obligation in interpreting a written contract is to discern

the contracting parties' intent. Quality Products and Concepts Co. v. Nagel Precision, Inc., 469 Mich. 362, 375, 666 N.W.2d 251 (2003) (citing Sobczak v. Kotwicki, 347 Mich. 242, 249, 79 N.W.2d 471 (1956)). This intent is to be determined from a reading of the instrument as a whole and in light of the surrounding circumstances. Cleveland v. Detroit Trust Co., 264 Mich. 253, 257, 249 N.W.2d 842 (1933). If the contract language is clear and unambiguous, the contract is construed as a matter of law and enforced as written. Quality Products, 469 Mich. at 375 (citing Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel, 460 Mich. 558, 570, 596 N.W.2d 915 (1999)); Port Huron Ed. Ass'n v. Port Huron Area School Dist., 452 Mich. 309, 323, 550 N.W.2d 228 (1996) (citing Dykema v. Muskegon Piston Ring Co., 348 Mich. 129, 138, 82 N.W.2d 467 (1957)).

### C. Analysis

Consistent with the clear and unambiguous wording of the Agreement, for AP to recover "Additional Expenses" under paragraph 5(g), AP must be able to prove at trial that it provided services to OU "in addition to the Services provided for in [the] Agreement." Agreement, ¶ 5(g), at 5. "Services" is defined under the Agreement as "the scope of services set forth in Attachment A." Agreement, ¶ 2(i), at 2. "Attachment A" reads in pertinent part:

**SCOPE OF SERVICES**

General Services

[AP] will provide document and data management for undergraduate and graduate admissions by Processing all Applications and Related Materials. [AP] will convert all hard copy, i.e., paper, Applications and Related Material to electronic format via imaging equipment [AP] will provide and maintain in good working order free of cost or expense to the University, except the cost of electricity necessary to operate the imaging equipment. [AP] will then extract the required data according to the University's specifications, using a double key verify method, and store the Application and Related Materials in an easily retrievable electronic folder . . . .

Improved efficiency in Application sorting and analysis is an essential part of

> improving the admissions workflow: [AP's] proprietary software, Capture, arranges Accounts in priority order using an algorithm that utilizes University criteria, allowing admissions officers to dedicate more time to admitting and enrolling the most qualified Applicants. Campus decision makers can access the Accounts ready for review without need of making photocopies; perform the necessary tasks to render an admissions decision, and move on. Capture seamlessly allows the admissions office to work faster and smarter, creating efficiencies in human and financial resources across an entire department. . . . .
>
> \*   \*   \*
>
> Processing Services
>
> 1. <u>Preparation, Imaging and Processing Forms</u>. [AP] will provide the University, at the Company's sole cost and expense, an imaging system comprised of those components necessary to process Applications, Related Materials and Retention Documents. [AP] will install and provide comprehensive training on the use of the imaging system to the University, and will maintain the imaging system in good working order.
>
> 2. <u>Electronic Application</u>. [AP] will create and maintain an electronic application form that meets University specifications free of charge to the University. The electronic application form will also provide for electronic payment of the Application Fee at the time an electronic Application is submitted.
>
> \*   \*   \*
>
> 4. <u>Data Entry for Applications and Related Materials</u> [AP] will extract and make available to the University the required data stipulated by the University from the Application and Related Material.
>
>    (a) <u>Data Standards</u>. [AP] will abide by the data standards established by the University, as they may be revised from time to time.
>
>    (b) <u>Incomplete or Illegible Data</u>. [AP] will adhere to the University's policies regarding the entry of incomplete or ineligible data, including an educated attempt by [AP] to complete defined data values for all incomplete or illegible data. . . . .

Agreement, at 14-15.

AP has failed to proffer evidence on which a reasonable jury could find that AP provided services to OU beyond the scope of services set forth in the parties' unambiguous Agreement and Attachment A. AP's proffered Exhibits 4-6 represent "Capture Enhancement/Problem Request Forms" and "Issue Tracking" sheets identifying services

performed by AP that include <u>inter alia</u> preventing the Capture computer program from accepting input of an applicant's telephone number if it exceeds 10 digits, consolidating into one input whether an applicant will be applying for financial aid or a graduate assistantship, creating a field of a recalculated GPA for transfer students, permitting data to be input using both upper and lower case letters pursuant to OU's specifications, eliminating the receipt of duplicate test scores, and correcting the program's inability to capture an applicant's "citizenship" input. Other proffered documents simply report the results of computer "test runs." AP has not articulated a specific service provided to OU, as set forth in the 90 pages of AP's Exhibits 4-6, that AP believes falls outside the Agreement's broad scope of services, services which clearly include AP's extraction of required data according to OU's specifications, AP's use of an algorithm that utilizes OU's criteria, AP's creation and maintenance of an electronic application form that meets OU's specifications "free of charge," AP's extraction of required data stipulated to by OU for use by OU, AP's adherence to data standards established and revised by OU, and AP's adherence to OU's policies regarding the input of incomplete or ineligible data. Construing the record evidence in a light most favorable to AP, and enforcing the Agreement as clearly written, OU is entitled to summary judgment of AP's claim for contractual damages under paragraph 5(g) of the Agreement in the absence of evidence that AP provided OU with services "in addition to the Services provided for in [the] Agreement." Agreement, ¶ 5(g), at 5. <u>Amway Distributors</u>, 323 F.3d at 390; <u>McLean</u>, 224 F.3d at 800; <u>Quality Products</u>, 469 Mich. at 375; <u>Port Huron Ed. Ass'n</u>, 452 Mich. at 323.

Even accepting AP's argument that Exhibits 4-6 represent OU's written requests for additional program "enhancements"[2], OU is also entitled to partial summary judgment

---

[2] AP asserts that a February 25, 2005 e-mail sent from OU Vice President Mary Beth Snyder to AP's Michael O'Conner set forth a protocol to be instituted to identify

6

based on AP's failure to proffer a "prompt invoice" as required under paragraph 5(g), let alone invoices totaling $353,750.00.  Agreement, ¶ 5(g), at 5.  An April 18, 2005 letter proffered by OU, written by AP CEO Rory Fitzpatrick to OU's General Counsel Victor Zambardi and discussing AP's processing of 70 "change orders" during the "Development Stage" of the process, explains why AP did not "promptly invoice" OU:

> Even though [AP] had no contractual obligation to provide any such enhancements or services, it provided all of them to the University at no additional cost as a gesture of good faith to the University, but at substantial cost to the Company [AP]."

OU's Exhibit 7, at 2.  AP has not proffered any of the "change orders" referred to by Fitzpatrick in his letter necessary to support a conclusion that the services AP provided fell outside the Agreement's scope of services.  Amway Distributors, 323 F.3d at 390; McLean, 224 F.3d at 800.

If, as here, an express contract exists, a contracting party may not recover in equity on a claim of quantum meruit involving the same subject matter.  Barber v. SMH (US), Inc., 202 Mich. App. 366, 375, 509 N.W.2d 791 (1993).  Given the broad scope of services provided for in the parties' Agreement, AP cannot recover payment for "extra" work as a matter of law.  Id.

## IV. Conclusion

OU is entitled to partial summary judgment of AP's breach of contract claim to the extent AP alleges it is entitled to contractual damages under paragraph 5(g) for additional services AP provided to OU.  AP's claims for payment for additional services is hereby DISMISSED with prejudice.

---

computer program "problems" (for which AP would be financially responsible) and program "enhancements" (for which OU would be financially responsible), but that this e-mail has been "temporarily misplaced."  OU's Exhibit D evidences that the parties implemented use of a "problem/enhancement" form, as does AP's Exhibits 4-6.

7

SO ORDERED.

Dated: February 13, 2007

                                                s/George Caram Steeh  
                                                GEORGE CARAM STEEH  
                                                UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 13, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee  
Deputy Clerk

---